UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GILBERT ANTHONY PEREZ,

Plaintiff,

-against-

WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS; WARDEN JOHN DOE; SGT JOHN DOE; JOHN DOE CORRECTION OFFICER,

Defendants.

25-CV-10499 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff, who currently is detained at Westchester County Jail, brings this action *pro se*. He asserts claims, under 42 U.S.C. § 1983, for alleged violation of his rights under the Fourth and Eighth Amendments in connection with a strip search on August 17, 2025.

By order dated July 17, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] For the reasons set forth below, the Court dismisses the complaint for failure to state a claim, with 30 days' leave to replead.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) .

**BACKGROUND**

The following facts are drawn from the complaint.[2] Plaintiff Gilbert Anthony Perez is a pretrial detainee at Westchester County Department of Corrections ("WCDOC"). In August 2025, Plaintiff and detainee Adam Russell were both housed on reception block 3NW at WCDOC. Plaintiff was moved out of reception on August 15, 2025. On August 16, 2025, Russell was moved from reception to a cell that Plaintiff had previously occupied. The following morning, on August 17, 2025, Russell was found deceased in his cell.

Plaintiff, who was in cell 24 on unit 2NW on August 17, 2025, was unaware of Russell's death. John Doe sergeant and two correction officers, John and Jane Doe, escorted Plaintiff to booking. Jane Doe left, and the male sergeant and correction officer escorted Plaintiff to the search area and directed Plaintiff to place his left hand on the wall and use his right hand to remove his clothing. While naked, Plaintiff was ordered to turn slowly, swab his mouth, lift his scrotum, and run his fingers through his hair. He was then ordered to turn around, squat and cough, and bend over and spread his buttocks. After the strip search, he dressed and underwent a body scan, and then he was placed in a holding cell before returning to unit 2NW. Plaintiff felt disgusted and humiliated. Plaintiff asked why he was searched, and Sergeant John Doe said that the search was "ordered by a higher-up." (ECF 1 at 5.)

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

On October 17, 2025, a correction officer in a 2NW told Plaintiff to go to booking for paperwork. Plaintiff was escorted to the Special Investigation Unit ("SIU"), where an SIU sergeant and a Westchester County Police detective were waiting. The detective said that Plaintiff was not in trouble, read him his rights, and questioned him about detainee Russell. Plaintiff responded that he did not know Russell, and denied having had any contact, drug dealing, or disputes with him. The SIU sergeant explained that, in early August 2025, Plaintiff and Russell had both been on reception block 3NW. (*Id.* at 6.)

Plaintiff contends that he was "indirectly" accused of Russell's death and subjected to an inappropriate strip search in violation of his Fourth and Eighth Amendment rights. He contends that the x-ray body scan can detect contraband, and thus there was no need for him to undergo a strip search. Plaintiff asserts that he was targeted and "used as a pawn" to alleviate pressure from WCDOC's errors related to Russell's death. Plaintiff seeks $10 million in damages and a change in jail policy pertaining to strip searches.

## DISCUSSION

### A. Fourth Amendment Claims

The Fourth Amendment provides that people have a right "to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Although the Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer*, 468 U.S. 517, 626 (1984), nonetheless "inmates do retain a limited right to bodily privacy under the Fourth Amendment," *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (reaffirming *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992)).

When evaluating a claim that an officer violated a detainee's limited right to bodily privacy, the "court must [first] determine whether the inmate has 'exhibit[ed] an actual,

subjective expectation of bodily privacy.'" *Id.* (quoting *Covino*, 967 F.2d at 77). Second, "the court must determine 'whether the prison officials had sufficient justification to intrude on [the individual's] [F]ourth [A]mendment rights.'" *Id.* (quoting *Covino*, 967 F.2d at 78). With respect to the second question, where the claim challenges an "isolated search," rather than a regulation or policy, "courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)."[3] *Id.* at 58.

*Bell* sets out a four-factor "test of reasonableness," which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Bell*, 441 U.S. at 559.

The first factor – the scope of the intrusion – varies with the type of search:

> A "strip search," though an umbrella term[,] generally refers to an inspection of naked individuals without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities.

*Cookish v. Powell*, 945 F.2d 441, 444 n.5 (1st Cir. 1991) (internal quotations and citation omitted). A visual body cavity search is generally considered invasive. *See Harris*, 818 F.3d at 58-59.

[3] Notably, the Supreme Court has held that "a blanket policy of conducting visual body cavity searches on new inmates [is] constitutional, even for misdemeanor arrestees where there is no reason to suspect the arrestee would have contraband." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 160 (2d Cir. 2013) (citing *Florence v. Board of Chosen Freeholders of Burlington Cnty.*, 566 U.S. 318 (2012)); *Murphy v. Hughson*, 82 F.4th 177, 186 (2d Cir. 2023) (holding that a Fourth Amendment violation can still be shown post-*Florence* "[i]f a misdemeanor arrestee entering a prison is subjected to an *ad hoc* strip search, without reasonable suspicion.").

With respect to the second factor—the manner in which the search was conducted—the Supreme Court has held that "searches must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560; *Harris*, 818 F.3d at 59-60 ("A strip search conducted in a professional manner is more reasonable than one that is not."). An otherwise permissible search can violate the Fourth Amendment if it is conducted in a manner that involves involve intentional humiliation or abuse. *See Florence*, 566 U.S. at 339 (Kennedy, J.).

As to the third factor—the justification for the search— whether an officer is searching for contraband or has some other justification supported by the record "is highly relevant to the reasonableness inquiry." *Harris*, 818 F.3d at 60. Fourth, with respect to the place where the search is conducted, "a strip search or body cavity search conducted in the presence of unnecessary spectators is less reasonable than one conducted in the presence of only those individuals needed to conduct the search." *Id.* at 62.

Here, Plaintiff alleges that he was subjected to a visual body cavity search as part of an investigation into the death that same day of another detainee who been in the same cell that Plaintiff had recently occupied. A visual body cavity search is invasive under any circumstances. Here, Plaintiff makes no concrete allegations of intentional harassment or abuse in connection with the search. Moreover, Plaintiff's allegations establish a legitimate penological justification for the search, which he states was triggered by investigation into the death of a detainee at the facility. Finally, Plaintiff alleges that the search was conducted in a designated search area; he refers to "others that are standing there and can also see everything" (ECF 1 at 7), but it is unclear if he means the presence of both the sergeant and the correction officer or whether he is suggesting that there were unnecessary spectators, perhaps due to the configuration of the search

areas.[4] On balance, the allegations of the complaint do not show that prison officials lacked sufficient justification to intrude on Plaintiff' Fourth Amendment rights and that the search was therefore unreasonable.

Plaintiff argues that searching him was unnecessary because trustees clean cells when detainees move, and thus the cell that he had vacated would have been cleaned before Russell's entry into the cell. He also asserts that an x-ray body scan would have adequately detected contraband and that the visual body cavity search was therefore unnecessary. Plaintiff's arguments about how correction officials might have done things differently are insufficient to suggest that their approach was exaggerated. *See Florence*, 566 U.S. at 327 ("[D]eference must be given to such officers' judgment "unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." (citing *Bell*, 441 U.S. at 546)).

Plaintiff also objects to having been "indirectly accused of the death of another inmate" (ECF 1 at 7), but the facts alleged merely suggest that correction officials were conducting an investigation. Plaintiff does not allege, for example, that he was the subjected to a prosecution commenced without probable cause.[5] Plaintiff thus fails to state a claim for a violation of his rights under the Fourth Amendment, and the Court dismisses this claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] Plaintiff alleges that "[t]he jail has a x-ray body Scan that can detect anything inside and outside the human body. Why strip Search me and Sexually humiliate me in the presence of my Own wellbeing and others that are standing there and can also see everything." (ECF 1 at 7.)

[5] To state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

**B. Eighth or Fourteenth Amendment Claims**

Plaintiff also invokes the Eighth Amendment for his claims arising from the search. Because Plaintiff alleges that his claims arose when he was a pretrial detainee, and not a convicted prisoner, the Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, governs his claims. *See Darnell v. Pineiro*, 849 F.3d 17, 34 (2d Cir. 2017) (discussing Eighth and Fourteenth Amendment standards).

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. An officer's actions can amount to punishment if they are taken with "an expressed intent to punish." *Id*. at 538. But even "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

A search that otherwise accords with the Fourth Amendment may nevertheless violate a prisoner's constitutional rights, such as when there is a sexual assault during a search, *Russell v. Scott*, 170 F.4th 83, 94-95 (2d Cir. 2026) (considering claims of convicted prisoner who alleged sexual assault during search), or when excessive force is used, *Harris*, 818 F.3d at 64 (holding that the "need for the use of force greatly affects the . . . analysis. For example, the need for the application of force to carry out a visual body cavity search may be weak if the search itself was unreasonable"); *Frost v. New York City Police Dep't*, 980 F.3d 231, 251-52 (2d Cir. 2020) ("Under the Fourteenth Amendment, the inquiry is not whether a detainee has experienced treatment that is cruel and unusual; rather, the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (citation and quotation marks omitted).

Here, Plaintiff alleges the following:

> I realize I was directly and indirectly accused of the death of another inmate who was in the care of WCDOC Employees at the time and place that I was not which resulted in me going against my will of an inappropriate Strip Search back in Aug of 2025 which is a violation of my 4th and 8th federal Constitution Amendment rights.

(ECF 1 at 7.)

Plaintiff has not alleged facts showing that officials took actions that were not "rationally related to a legitimate nonpunitive governmental purpose" or that were "excessive in relation to that purpose." *Kingsley*, 576 U.S. at 397-98. He also does not allege that any defendant acted with "an expressed intent to punish" him. *Bell*, 441 U.S. at 538. Plaintiff's allegations are therefore insufficient to plead that his Fourteenth Amendment rights were violated, and the Court dismisses this claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### D. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is unclear if Plaintiff may be able to allege additional facts to state a valid claim, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

## CONCLUSION

The Court dismisses Plaintiff's federal claims, 28 U.S.C. § 1915(e)(2)(B)(ii), and declines supplemental jurisdiction of his state law claims, 28 U.S.C. § 1367(c)(3), with 30 days' leave to file an amended complaint that complies with the standards set forth above.

If Plaintiff chooses to file an amended complaint, it must be submitted to this Court's Pro Se Intake Unit within 30 days of the date of this order, be captioned as an "Amended Complaint," and labeled with the document with docket number 25-CV-10499 (LLS). An Amended Prisoner Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for the reasons set forth in this order.

SO ORDERED.

Dated: July 25, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.